UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FORREST WAYNE HODGE,<br><br>    Plaintiff,<br><br>    v.<br><br>SUNSET SCAVENGER COMPANY, a California Corporation, and DOES 1-10,<br><br>    Defendants.<br>_____/ | No. C 12-01852 WHO (LB)<br><br>**ORDER**<br><br>[Re: ECF No. 66] |

## INTRODUCTION

Mr. Hodge, who worked for Sunset Scavenger for 13 years, was fired after he was injured on the job. Thereafter, he filed this lawsuit challenging his termination as a violation of the Family Medical Leave Act ("FMLA") and as race discrimination under 42 U.S.C. § 1981. *See* First Amended Complaint ("FAC"), ECF No. 16.[1] He moved to compel a Rule 30(b)(6) deposition and document production related to 26 categories of information. Joint Letter Brief, ECF No. 66. Purusant to the undersigned's standing order, the parties met and conferred and worked out their differences on some categories (4, 8, 11, 12, 13, 16, 19, 20, 21, and 25) and still dispute other categories (1, 2, 3, 9, 15, 23, 24, and 26). Joint Letter Brief, ECF No. 66 at 1 & n. 1. The parties attempted a compromise

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

ORDER (C 12-01852 WHO (LB))

allowing Defendant to produce declarations on some categories in lieu of live testimony. *See id.* at 1. The court held a hearing on August 15, 2013 and grants Mr. Hodge's discovery requests subject to the limits described below.

## STATEMENT

According to the complaint, Plaintiff injured his leg on the job on January 11, 2010. FAC ¶ 11. When the pain did not subside in two days, he went to the doctor, who diagnosed him with a severe leg strain and imposed work restrictions regarding walking, weight bearing, stair climbing, lifting, pushing, pulling, squatting, kneeling, ladder climbing, and driving. *Id.* ¶¶ 12, 13. At a follow-up appointment on January 20, Plaintiff reported feeling slightly better, but his doctor observed swelling in his thigh, continued the restrictions, and prescribed six physical therapy sessions. *Id.* ¶ 15. After the January 20 doctor's appointment and again on January 21, 2010, Plaintiff attended an outdoor sportsman trade show. *Id.* ¶ 16. He previously had asked for, and was given, time off to attend the show. *Id.* (That time off was not taken as he was on leave.)

At another appointment on January 27, 2010, the doctor eased the workplace restrictions. *Id.* ¶ 19. At the next appointment on February 8, 2010, Plaintiff felt significantly better, and his doctor adjusted his workplace restrictions again. *Id.* ¶ 22. On February 10, at another doctor's appointment, Plaintiff reported minimal residual pain, and his doctor determined that he required workplace restrictions through February 14, 2010 and cleared him to return to work on February 15, which he did. *Id.* ¶¶ 23, 24.

The parties' different positions about the end of their employment relationship give context to the discovery dispute.

Defendant's position is that Plaintiff lied about his injuries. 7/12/13 Joint Case Management Conference Statement, ECF No. 60 at 4. After he was injured, his work limitations included no driving, and Defendant offered him temporary modified work as an accommodation, but Plaintiff claimed he could not accept the offer because he lives in Vallejo and his driving preclusion prohibited his driving to work in San Francisco. *Id.* A third-party investigator's surveillance of him on January 27, 2010 showed him engaging in activities that violated his work restrictions, including driving himself approximately 90 miles from his doctor's appointment in San Francisco to Cal Expo

in Sacramento. *Id.* January 27 was the day that his work restrictions were modified to allow limited driving, but on February 1, Plaintiff claimed in a recorded interview with an investigator that he could not work due to his driving restriction and inability to sit or stand for long. *Id.* But Plaintiff drove himself to Sacramento five days in a row from January 20 to 24, 2010. *Id.*

Plaintiff's position is that he performed his job satisfactorily but was terminated when he took medical and disability leave after he was injured in January 2010, and this retaliatory termination violated the FMLA. *See id.* at 3. Defendant has a corporate culture of retaliation against workers injured on the job, its investigation was poor and false, and it did not fire similarly situated non-African-American employees. *Id.* at 3. Before he was injured, he asked for and received permission to attend the trade show, which he did on January 20 and 21. FAC ¶ 16. Because his employer chose to put him on leave, and he was not ordered to stay home or in bed, he went, even though he was in pain, and spent most of his time sitting at a booth passing out flyers. *Id.* Defendant knew he would be attending because he had talked about it openly with co-workers. *Id.* ¶ 17. The video that Defendant took showed him as being more active than he actually was. *Id.* ¶¶ 29-30.

## ANALYSIS

For each of the categories discussed below, Plaintiff seeks to compel Sunset Scavenger to provide deposition testimony under Federal Rule of Civil Procedure 30(b)(6) and produce related documents. *See* ECF No. 33-2 at 7-9.

### I. CATEGORIES 1 & 2: INVESTIGATIONS BY JEFF HOUSE/TIM HESTER FROM 2007

Mr. House gives daily assignments to persons on modified leave, and Mr. Hester is another supervisor. Joint Letter Brief, ECF No. 66 at 2. Plaintiff seeks "relevant evidence" from these investigations regarding their treatment of similarly-situated employees in order to prove his wrongful termination claim. *Id.* He is willing to limit his discovery request to investigations of employees on modified duty – those most similar to Plaintiff. *Id.* Defendant argues burden and overbreadth. *Id.*

Discovery into treatment of similarly-situated employees subject to the same supervisors is relevant to show a pattern or practice of discrimination. That discovery can include the nature and quality of plaintiff's work as compared to other employees who received better treatment, and the

ORDER (C 12-01852 WHO (LB))
3

identity and demographic characteristics of those other employees. Plaintiff seeks "relevant evidence" only from the same supervisors who were involved in his termination (and agreed on the record that this is the discovery he seeks). Defendant argued burden only conclusorily in the letter and in their responses. It offered slightly more context at the hearing about the number of employees implicated (214), the number of days and hours at issue, and those investigated for lying (4) (and suggested limiting it to the 4). It also suggested that a third-party investigator was the source of the information. Plaintiff responded that Mr. House initiated the third-party investigation, and also, it is unlikely that all 214 employees were actually investigated and likely the number was much smaller (and used 20 as a hypothetical example).

The discovery is relevant. The burdens as articulated are not substantial: Plaintiff limits the discovery to pattern-and-practice information, and while the court cannot guess at how Sunset maintains its records, it does not seem difficult to figure out a way of accessing relevant information in a way that is not burdensome. Also, the worst-case-scenario number is not large. The court orders the discovery.

## II. CATEGORY 3: INFORMATION ABOUT EMPLOYEES FIRED FOR DISHONESTY

Defendant has produced the identities and races of employees terminated for dishonesty and resists on relevance and privacy grounds providing the circumstances surrounding the termination. *Id.* at 3. As discussed in the last section, the discovery is relevant. The protective order protects any privacy interests, and Plaintiff offers as a compromise that Defendant can "de-identify" the employees. The court orders the discovery.

## III. CATEGORY 15: EMPLOYEES THAT TIM HESTER RECOMMENDED FIRING

Defendant resists on relevance and privacy grounds, and Plaintiff offers de-identification as a protection. Given the protective order and the lack of burden identified by Defendant, the court orders the discovery for the reasons stated above.

## IV. CATEGORY 23: IDENTIFY ALL CURBSIDE RECYCLING COLLECTORS

Category 23 states in total, "IDENTIFY all curbside recycling collectors." *See* ECF No. 33-2 at 8. Plaintiff's Notice of Deposition, ECF No. 33-2 at 7, defines the term "IDENTIFY" in reference to an individual as "to set forth the person's race, date of birth, and whether or not they ever took

disability leave."

In the joint letter, Plaintiff seeks the demographic profile of other Sunset employees in his position as a baseline for statistical analysis. He asks that the employees be identified by race, age, disability status, and assigned a numerical identifier (to protect privacy). Defendant resists the discovery, arguing that it already produced a declaration identifying (by employee number) its employees who held positions substantially similar to Plaintiff's position as a "Driver-Fantastic 3" and provided information regarding the employee's "race, date of birth and whether the employee took disability leave during their employment." Sunset claims it has fully complied.

Statistical analysis is relevant for the reasons that Plaintiff identifies: it can show a discriminatory animus and is relevant in disparate treatment cases. *See Schechner v. KPIX-TV*, No. 11-15294, 2012 WL 1922088 (9th Cir. May 29, 2012); *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1362 (9th Cir. 1985). Still, Plaintiff clearly defined the information he wanted and appears to have gotten it. Based on the description in the joint letter brief, the declaration satisfied the need to provide deposition testimony on this topic. The same information is likely covered by other deposition topics. Plaintiff's request for production is broader than the deposition notice, however, and call for relevant information. It extends to "any other document or item referring or relating to the categories listed above." ECF No. 33-2 at 9. To the extent Sunset has not produced such documents, it must do so now.

## V. CATEGORY 24: EMPLOYEES TERMINATED AFTER TAKING DISABILITY LEAVE

Defendant produced a declaration identifying 54 employees who were terminated within one year after taking disability leave and provided no additional detail. Joint Letter Brief, ECF No. 66 at 6. Plaintiff's say they tried to get the information through interrogatories 2 and 4 and requests for production 6, 11, and 12. *Id.* Defendants respond that Plaintiff asked them only to "identify" employees (and defined "identify" as race, date of birth, and whether they took disability leave), and they provided that information. *Id.* In other categories, Plaintiffs asked for the circumstances surrounding the termination but did not do so for category 24. *Id.*

The court does not take such a literal view of the discovery request as to foreclose discovery. First, the categories were for a 30(b)(6) deposition, and Plaintiff compromised by allowing Sunset

1 to provide declarations and information in lieu of live testimony. At a deposition, Defendants would
2 have been forced to answer questions related to the circumstances surrounding the 54 terminations.
3 Second, the categories also are read in the context of the "Notice to Produce Documents" that
4 follows them, and that covers the context that Plaintiff seeks. Third, there is potential overlap with
5 other categories that makes this more of an extra category geared toward discovery of the same
6 pattern-and-practice discovery sought and ordered above. Fourth, Plaintiff's description at the
7 hearing of possible motivations for Sunset's employment actions underscores the relevance of the
8 discovery. The court orders it.

## VI. CATEGORY 26: EMPLOYEES GIVEN LIGHT DUTY

The request is for "[a]ll employees who were given light duty work as an accommodation for a disability" *Id.* at 9. Defendant provided a numerical breakdown of employees provided light duty and the number of days they worked. *Id.* According to Defendant, this is all that Plaintiff asked for. *Id.* According to Plaintiff, the declaration disclaimed knowledge of what light duties were provided, and they are entitled to the context through a 30(b)(6) witness concerning how modified duty is determined. *Id.* For the reasons discussed on the record, and because the declaration was meant as an accommodation to avoid or streamline live testimony (and not to prevent it if the accommodation did not work), the court orders it. The court understands Sunset's argument that this is not a failure to accommodate case, but as Plaintiff argued at the hearing, the context is relevant, and Sunset appeared to agree at the hearing that there is no burden given that what Plaintiff wants is context during the 30(b)(6) deposition.

## VII. CATEGORY 9: EMPLOYEES WHO COMMUNICATED WITH DOCTOR

Plaintiff seeks the identities of Sunset employees who communicated with Plaintiff's workers-compensation doctor and the substance of their communications. *Id.* at 4. Defendant produced a declaration from its Safety Manager, who administers the workers' compensation program, and he declared that he only received faxes from the doctor. *Id.* He said that the only other person who assists him and potentially had contact with the doctor is his Shop Steward, and she confirmed to him that she did not speak to the doctor or anyone in his office. *Id.* This declaration appears to be sufficient. That being said, if there is something about the context that requires illumination through

the live testimony, it is hard to see why that is a problem given that the declaration accommodation was meant to avoid live testimony if possible, not to foreclose it altogether. The court sees no burden and orders testimony on this topic.

## CONCLUSION

This disposes of ECF No. 66.

**IT IS SO ORDERED.**

Dated: August 15, 2013

_____
LAUREL BEELER
United States Magistrate Judge